Fox and another, Respondents, vs. BOLDT, Appellant.

*June 3—September 25, 1920.*

*Sales: Warranties implied: Fitness of machine for particular pur-*
*pose: New or second-hand machine: Parol evidence: Accept-*
*ance of machine: Waiver of breach of warranty: Judicial*
*notice of usage of trade: Costs: Failure to comply with rules*
*of supreme court.*

1. Where a contract for the sale of a machine was in writing which contained no express warranties, parol evidence was inadmissible to show a verbal warranty; and because of sub. (4), sec. 1684*t*—15, Stats., there was no implied warranty that a specially named engine would develop a particular horse-power or that it was suitable for any purpose.

2. Where a machine is ordered from a dealer in machinery there is an implication that the order is for a new machine, and the contract could not be satisfied by the delivery of a used, second-hand, or rebuilt machine.

3. Even though the purchaser accepted the machine and waived his right to rescind the contract, he was nevertheless entitled to damages for the breach of a warranty that the machine was a new one, and was entitled to a verdict as to the amount which should be applied in diminution or extinction of the purchase price, under sec. 1684*t*—69, Stats.

4. The fact that the purchaser of a tractor, after abandoning it about Thanksgiving Day, tried it out in the following spring on a disk to see if it would do ordinary farm work, with a view of making a proposition to buy it and seeing what it was reasonably worth, did not show an acceptance of the tractor or a waiver of the right to rescind the contract for breach of an implied warranty that the tractor was new.

5. The purchaser of a machine must exercise his option to rescind with promptness on the discovery of a. defect which constitutes a breach of warranty.

6. A purchaser of a machine impliedly warranted to be new was entitled to suspend judgment on the question as to whether or not it .was new, so long as the seller was endeavoring to make it perform the work which a new one might reasonably be expected to perform, and he was under no obligation to rescind until that time.

*On rehearing:*

7. Under sec. 1684t—15, where one orders from a dealer a specified machine, there is an implied warranty on the part of the dealer that the machine shall be new.

8. The usage of trade that, when a specified machine is ordered, both parties contemplate a new machine, is so universal as to be the subject of judicial notice.

9. Under Supreme Court Rule 44, providing that no costs shall be taxed for printing any case unless the rules of court are complied with, where no attempt has been made by appellant to comply with Rule 6, requiring him to print a case "containing an abridgment of the record; so far as necessary to present the questions for decision," he cannot have costs for printing the case.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Action to recover on promissory notes given for the purchase price of a tractor. Defense, breach of warranty. Defendant and his brother formed a partnership, to conduct the business of threshing grain, about August 1, 1918. The brother had an old separator, and it was agreed that he should buy a new 26—46 Case separator and defendant would buy the tractor to run it. Plaintiffs were engaged in the farm machinery business at Platteville. On August 1, 1918, defendant purchased from them a 12—25 H. P.

Fair–Mor tractor. The contract therefor was in the nature of a written order, and was as follows:

Geo. Fox & Sons,                    Order No. 204.
Platteville, Wisconsin.              Date sale: Aug. 1, 1918.
Sold to: *Edward Boldt.*             Terms: See terms below.
Address: Platteville,                When wanted: Aug. 5th.
   Wisconsin, R. F. D.         Date filled: Aug. 8, 1918.
Ship to customer.                    Charge.
Route: Milw. Ry.
The following goods as per prices and terms on this
1 12—25 H. P. Fair–Mor tractor, F. O. B.
  Janesville .............................$1,400 00
Frt. ............................................ 21 37

                              $1,421 37

*Conditions:* The customer is to deposit $100 with order as per attached receipt, and give notes for the following amounts and due at time indicated:

         January 1, 1919, $300.
         March 1, 1919, $500.
         March 1, 1920, $500.

It is understood that customer may make payments in any amount or amounts in advance of due date. As indicated above, the price does not include freight, which is to be paid by customer on receipt at the depot.

                Signed, George Fox & Sons, Agent.
                Signed, *Edward Boldt,* Purchaser.
                    Per *Frank L. Fox.*

Platteville, Wisconsin, Aug. 1, 1918.          No. 269.
Received from *Ed Boldt,*
  Deposit on tractor ........................$100
                    GEO. FOX & SONS,
                    By *Free. Fox.*

The tractor arrived at the depot in Platteville August 6th. At that time defendant noticed that the hole in the drawbar was worn. He was told by one of the plaintiffs that this was the result of testing it out at the factory, and for the time being he thought no more of it. The next day the tractor was taken to the farm of one of defendant's

neighbors where they were going to thresh. They started threshing on August 8th, and the engine soon developed a hot-box. The expert who was present to start the engine loosened the boxing and this caused the engine to knock. They ran along about half capacity during the rest of the day. The next day they ran about half capacity with considerable knocking in the engine. On August 12th they ran about half capacity. One of the plaintiffs was there and told defendant that when they got the new separator the tractor would be O. K. He said the belt pulley on the cylinder of the old separator was too small. The engine was still knocking and the kerosene pump leaked. Plaintiffs put on a new pump. There was considerable spark-plug trouble, overheating, and knocking on the 13th and 14th of August.

Owing to rain they did no more threshing until August 20th, when they could not start the engine. They telephoned plaintiffs and one of them came out, took some gasoline from his car, and started the tractor at about 11:30. They kept the tractor running over the noon hour, and continued to thresh about half capacity. The next day they had considerable spark-plug trouble and defendant went to Platteville and got a new set of spark plugs, which did not seem to remedy the trouble. One of the plaintiffs said they would fix the tractor so that it would run in good shape, and just as soon as the new separator came everything would be O. K. The new separator came August 23d. The tractor did not work any better on the new separator. *Fox* was notified, and he said "We will fix it so it will pull the insides out of the new separator."

On August 28th Mr. Townsend, designer of the tractor and manager of the Townsend Manufacturing Company, which manufactured the same, came out to fix the tractor. He worked on the engine all day. He recommended a new drive pulley on the separator two inches smaller than the one they were using. They got the pulley he recommended

and ran along on August 29th until 4:30, when the intake valve in the engine broke. They could not use the tractor until the intake valve was finally replaced on September 10th. In the meantime they ran the separator with a fifteen horse-power portable engine. This engine ran it in first-class shape.

There was no threshing between September 10th and September 16th because of wet weather. They then attempted to move the separator with the tractor. *Freeling Fox* was operating the tractor, and, going down a hill, threw out the clutch and broke both clutches on the drive gear. The clutch sleeve had too much play on the crank shaft. It was worn too much and was too loose. New clutches came and were put on on the 18th. On the 19th they started to thresh. It ran fairly well, feeding it a little over half capacity. No more threshing was done until September 30th. They could not get the engine started until half-past 10 o'clock, and after it was started it did not seem to develop any power at all. *Fox* was notified and he said he would get a man out from the factory to fix it. He did not come until the middle of October. He looked the engine over and said the cylinder-head was leaking water into the kerosene pump and sent the old cylinder-head back to the factory and a new one was sent from the factory to take its place. About a week later a representative came from the factory and put the new cylinder-head on and said, "When you are ready to thresh we will come out and run this for you and see that it runs all right." He came again the Tuesday before Thanksgiving (no threshing having been done in the meantime), put on a new carburetor, started out about 8:30, ran along all morning and threshed ninety-five bushels. About 11:30 he was adjusting some part of the engine and the belt pulley ran tight. In attempting to get the belt pulley off he broke it to pieces. He said, "Now we are done." There were four stacks of grain open, and defendant said, "Now we will have to go and hire another

tractor." He said, "All right, go and get another one; I have done all I can do, but I see that I can't pull it." Three days later defendant saw one of the plaintiffs and told him to get the tractor; that he was perfectly satisfied that it could not do the work and he was through with it.

As matter of defense defendant alleged that plaintiffs warranted that the tractor would run and operate a 26—46 grain separator; that the horse-power of the engine was 12—25, 12 tractor pull draw-bar, 25 by belt, and that it was agreed that plaintiffs would give defendant a written warranty that the tractor would run and operate said 26—46 separator; and by way of counterclaim it was alleged that the written contract between the parties failed to express their agreement in that it did not include such warranty, and reformation thereof was prayed so that it should express the warranty as above stated. It was also alleged that the tractor was a second-hand tractor.

At the close of the evidence the court directed a verdict in favor of the plaintiffs, for reasons which will more fully appear in the opinion. From the judgment entered on such verdict the defendant brings this appeal.

*Jesse J. Ruble* of Platteville, for the appellant.

For the respondents there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *L. A. Brunckhorst.*

The following opinion was filed July 3, 1920:

OWEN, J. The contract between the parties was in writing. It contained no express warranty, and parol evidence to show a verbal warranty was not admissible. *Ohio E. Co. v. Wis.-Minn. L. & P. Co.* 161 Wis. 632, 155 N. W. 112. The statute (sub. (4), sec. 1684*t*—15) provides that "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." There was therefore no warranty that the engine would de-

velop any particular horse-power or that it was suitable for
any purpose, either express or implied, coupled with the con-
tract of sale. The contract, however, called for a new
tractor. While this is not so specifically stated in the writ-
ten order therefor which constitutes the contract between the
parties, it is nevertheless implied from the circumstances of
the case. Where a farmer orders a certain machine from a
dealer in machinery there is an implication that the order is
for a new machine, and the contract cannot be satisfied by
the delivery of a used, second-hand, or rebuilt machine
(*Grieb v. Cole,* 60 Mich. 397, 27 N. W. 579), and there is
an implied warranty that the machine delivered pursuant to
the order is a new machine.

Defendant alleged in his answer that the tractor delivered
to him was a second-hand tractor, and he contends that the
evidence is sufficient to take this question to the jury. The
evidence upon this question is necessarily circumstantial.
The machine was newly painted and in every respect had
the appearance of a new machine. The evidence justify-
ing the inference that the tractor was a second-hand machine
may be briefly stated as follows: It is claimed that the
machine was rated as a 12—25 horse-power tractor. This
is indicated by its name—"12—25 H. P. Fair-Mor Trac-
tor." While it must be held that no implied warranty re-
sults as between the parties to this action that the tractor was
of 12—25 horse-power, nevertheless it is the inference that
would naturally arise from the designation. The president
of the Townsend Manufacturing Company, which company
manufactured the tractor, did not deny that it was designed
to be a 12—25 horse-power tractor. The letter written by
the Fairbanks-Morse Company, distributor of the tractor, to
the defendant rather assumes that such was its rating. In
their letter they say: "We understand you claim the engine
will not develop its rated H. P., and the Townsend Mfg. C⋅
seem willing to make a test to prove that the engine is up to
guaranty in this respect." So while there cannot be said to

be a warranty as between the parties to this action that the tractor was a 12—25 horse-power tractor, it may be assumed that the defendant considered that he was getting a tractor of that horse-power and the manufacturer thereof so rated it.    There is evidence in the case that this tractor did not do the work ordinarily done and which may be expected to be done by an engine of that rated power.    There is evidence in the case justifying the conclusion that an engine of that power would satisfactorily operate defendant's separator.    The evidence is quite conclusive that it failed to do so and that it was unable to satisfactorily operate the separator when fed at more than about half capacity.    Besides its failure to satisfactorily run the separator, there is evidence to show that it did not display the power of a 12—25 horse-power engine in hauling the separator over the road.    It failed to pull the separator up a hill where a 10—20 engine had pulled the same separator.    This lack of power strongly indicates that something was wrong with the engine.    In addition to this, we have what the designer of the tractor and the president of the company manufacturing the same terms an unusual number of replacements. These replacements consisted of a pump, cylinder-head, intake valve, new clutches, magneto, spark plugs, and cable.

Breakages and replacements are not ordinarily expected of a new machine.    They are to be expected from the use of an old machine.    To be sure, Mr. Townsend attributed the cause of these breakages to the fact that the engine was overloaded.    It is significant, however, that he did not so inform the defendant at the time he was endeavoring to make the engine operate the separator.    Neither he nor any of the experts nor either of the plaintiffs told the defendant that the engine was of insufficient horse-power to properly operate the separator.    On the contrary, one of the plaintiffs assured the defendant that they would fix the engine so that "it would pull the insides out of that separator."    The conclusion of Mr. Townsend, therefore, that the number of

breakages was the result of overloading the engine must be substantially discounted by the fact that his conduct in endeavoring to make the engine do the work was inconsistent with the idea that the work imposed upon it was excessive for its rated horse-power. It is also a significant fact that the replacements were all readily and willingly made by the plaintiffs without charge to the defendant. Of course it may be admitted that a new machine sometimes behaves just as this tractor did. It is submitted, however, that it was the behavior of an old and worn machine rather than that of a new one. In addition to these circumstances there is positive evidence of prior use of the machine. One of the plaintiffs testified that they furnished a new cable because the old one had become oil-soaked. If a cable would become so oil-soaked as to require replacement by a new one during the short period of time that this tractor was in operation, it seems certain that they are short-lived. Both clutches on the drive gear broke. The defendant testified: "The clutch sleeve had too much play on the crank shaft; *it was worn and much too loose.*" The hole in the drawbar showed wear. This was admitted by the plaintiffs, who said it was the result of testing it at the factory. The cylinder-head leaked water into the kerosene pump—a result hardly to be expected from a new engine. "It always missed on that one cylinder just as soon as it got to pulling, and it never did yet and never will work on that," according to the testimony of one of defendant's witnesses who worked with him in the operation of the threshing outfit. We think the evidence was sufficient to take to the jury the question of whether the tractor delivered in fulfilment of the order was a new or second-hand machine.

We do not know what view the trial court took of this feature of the case. According to the statement of the trial judge, he directed a verdict because the defendant had accepted the machine and had waived his right to rescind the contract. But even though the defendant did accept the

machine and waived his right to rescind the contract, he was nevertheless entitled to damages for the breach of the warranty that the tractor was a new machine, and was entitled to a verdict as to the amount, which should be applied in diminution or extinction of the purchase price. Sec. 1684t—69, Stats. But, upon the evidence, we do not think it can be held, as a matter of law, that the defendant had lost his right to rescind for breach of warranty. It is without dispute that within three days of the time he was told by a representative of the company on or about Thanksgiving Day that he could do nothing further to make the engine operate the separator, the defendant told one of the plaintiffs to get the tractor, that he was through with it. Plaintiffs themselves admit the substance of such a conversation, but are uncertain as to the date. They do, however, fix it as sometime during the month of December. Failing to secure satisfaction from the plaintiffs, he wrote to Fairbanks-Morse Company, the distributor of the engine, in March, as set forth in the statement of facts. He made no use of the engine whatever from the time it was abandoned, about Thanksgiving Day, except that during the following spring he tried it on a disk to see if it would do ordinary farm work, with a view of making a proposition to buy the tractor and pay what it was reasonably worth. This use of the tractor was in the nature of a test and could not be construed as an acceptance thereof. *Fox v. Wilkinson,* 133 Wis. 337, 113 N. W. 669; *Kelsey v. J. W. Ringrose Net Co.* 152 Wis. 499, 140 N. W. 66.

It is the settled law, of course, that the purchaser must exercise his option to rescind with promptness upon the discovery of the defect which constitutes the breach of warranty. Assuming that the tractor delivered was second-hand, there was no way by which that fact could be discovered except by use thereof. It was not patent upon mere observation or casual inspection. The worn hole in the drawbar was the only patent evidence of its prior use.

With reference to this, however, the defendant received the assurance of one of the plaintiffs that it was the result of testing it out in the factory. The subsequent experience was but cumulative evidence tending to justify the conclusion that the tractor had had prior usage. The defendant was entitled to suspend judgment upon the question so long as plaintiffs were endeavoring to make the engine perform the work which it seems it might reasonably be expected to perform, and he was under no obligations to rescind until that time.

We therefore think the trial court was in error in not submitting the case to the jury upon the questions herein indicated, for which reason there must be a new trial.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

On September 25, 1920, a motion for a rehearing was denied, with $25 costs, and the following opinion was filed September 28, 1920:

OWEN, J. Upon a motion for rehearing, respondents insist that the court erred in holding that there was an implied warranty that the tractor delivered was a new machine, on the ground that there is no implied warranty of quality or fitness, except as specified in sec. 1684t—15, Stats., which does not include the warranty declared in the opinion of the court. This contention seems to merit a response from the court. We suggest, however, that, if the contention were sound, there is little likelihood that it would affect the result. No honest or fair-dealing man would sanction for a moment, as sound or just, a proposition of law that would turn out of court as remediless one who has received from a dealer in machinery a second-hand machine in fulfilment of an order for a new machine. An attempt to palm off a second-hand machine on a purchaser under such circumstances is fraud, if nothing else, and the principles of that

branch of the law may be readily invoked to protect the purchaser if no other remedy exists.

However, we think the statute, sec. 1684t—15, imports into the transaction the implied warranty declared in the opinion of the court. That section provides: "An implied warranty or condition as to quality or fitness for a particular purpose may be annexed by the usage of trade." Where one orders from a dealer in machinery a specified machine he expects a new and not an old or second-hand machine, unless a second-hand machine is specifically mentioned in the order. A new machine is within the contemplation of both parties. This is so universal as to constitute a usage of trade of which this court will not hesitate to take judicial notice. By virtue of this usage of trade the contract of sale of the tractor in question was coupled with a warranty as to the quality of the tractor delivered, viz. that it was a new tractor. Because of the seeming confidence with which respondents' attorneys challenge the conclusion of the court in this respect, we take this occasion to indicate that our conclusion was not arrived at without due appreciation of the provisions of the statute relied upon to establish its fallacy. As no other contentions made on the motion for rehearing are considered of sufficient merit to require special mention, it follows that the motion for rehearing must be denied.

The mandate, however, should be modified so as to deny costs to appellant for printing the case. Rule 6 of this court requires the appellant to print a case "containing an abridgment of the record, so far as necessary to present the questions for decision." Rule 44 provides that "No costs shall be taxed for printing any case, supplemental case, or brief unless these rules shall have been complied with." The entire bill of exceptions was printed verbatim in the printed case. No attempt at abridgment was made. The provisions of Rule 6 were utterly ignored.. The mandate of the court is therefore modified so as to provide that appellant shall have no costs for printing the case.