MALLOW and another, Appellants, vs. HALL and another, Respondents.

*October 13—November 9, 1932.*

The cause was submitted for the appellants on the brief of *Sauthoff & Hansen* and *A. E. O'Brien,* all of Madison, and for the respondents on that of *Hill, Beckwith & Harrington* of Madison.

ROSENBERRY, C. J. Upon the opening of the trial, O. S. Mallow, one of the plaintiffs, was sworn as a witness. He testified to the making of the contract and the delivery and

installation of the apparatus. Upon cross-examination counsel for the defendants asked the following question:

"Do you recall, Mr. Mallow, that Mr. and Mrs. Hall were particularly anxious if they purchased an oil burner to get a quiet one?"

To which counsel for plaintiffs objected:

"If the court please, I think we may as well settle now that any and all conversations held contemporaneous or antecedent to the signed agreements are inadmissible. The contract speaks for itself and the contract contains all the warranties between the parties."

Whereupon the court stated: "Counsel just come forward. I have an opinion on that I might as well give the counsel the benefit of now." What the opinion was, the record does not disclose. Thereupon counsel for plaintiffs said: "Let that objection stand as to all testimony in relation to such conversations so that we do not have to repeat it constantly." The Court: "Answer it."

The evidence with respect to prior oral negotiations was apparently received subject to plaintiffs' objection under some rule of law announced by the court but not disclosed by the record. The admission of this testimony under the circumstances, so far as it related to an attempt to vary the terms of the written contract, was erroneous.

The contract as modified contained the following clause:

"Badger Oil Burner which is to be installed, is guaranteed by the Mallow Oil Heating Company against any imperfection in materials and workmanship, and that it will supply heat up to the normal heating capacity of boiler or furnace as determined by standard heating methods, provided that the oil used is of the grade and quality specified by the seller. . . .

"There is no understanding, verbal or otherwise, which is not set down herein."

It was the contention of the plaintiffs that the contract between the parties contains an express warranty as to the heating capacity of the apparatus; that the contract being in writing and it being undisputed in the case that all representations claimed by the defendants to be made were made before the signing of the contract, under the well established rule the defendants cannot vary the terms of this contract by parol testimony. To this claim the defendants reply that the evidence discloses an implied warranty for the reasons (1st) that the vendor was advised that the equipment purchased was for a particular purpose; (2d) that an implied warranty is raised by sec. 121.15 (1), Stats. 1931; (3d) that sec. 121.15 (4) has no application to the case.

Sec. 121.15 (4) is as follows:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

Sec. 121.15 (6) provides:

"An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

The jury found and the trial court approved the finding that the plaintiff represented to the defendants before the contracts were made that the heating plant would heat the house. The evidence to support this finding was apparently received over objection. The warranty contained in the contract was that the plant would supply heat up to the normal heating capacity of boiler or furnace as determined by standard heating methods, provided that the oil used is of the grade and quality specified by the seller. It is difficult to understand how it can be argued that these warranties do not relate to the same thing—the capacity of the furnace to furnish heat. The defendants claim that under sec. 121.15 (1), which provides: "Where the buyer, expressly or by implica-

tion, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, . . . there is an implied warranty that the goods shall be reasonably fit for such purpose," that having informed plaintiffs that he wished a furnace that would heat the house, there was an implied warranty on the part of the plaintiff that the apparatus when installed would be reasonably fit for such purpose. Whatever the situation might be if the plaintiff had had a contract to install a heating plant in the house entire, we need not stop to inquire. The evidence in this case is very convincing, as well on the part of the defendants as the plaintiffs, that the difficulty is that the pipes which run to the rooms regarding which complaint is made are too long to enable the whole plant to work properly in that it gets out of balance. The plaintiff testified that he was of the opinion that the apparatus should heat the house and still was of that opinion if the plant was operated properly, and that although he attempted to rectify the plant, he claims that he was not under any obligation to do so under the contract but that what he did was done in order to please a dissatisfied customer. If under the circumstances of this case, the property having been sold under a trade name, the warranty could extend no farther than that equipment furnished would produce the necessary amount of heat, the distributing plant having been furnished by the defendants, there could be no implied warranty that there would be proper distribution of the heat. The evidence establishes quite satisfactorily that the plant produced heat enough but the difficulty was with its distribution.

In submitting to the jury question number 3: "Did the plaintiff represent to the defendants before the contracts for the heating plant were entered into that the heating plant would heat the house?"—the court entirely ignored the fact that the implied warranty at the most related to the capacity

of the plant, not to the efficiency of the distribution system. Heating the house and furnishing a plant which will create enough heat to heat the house are two entirely different things. If, as claimed by the defendants, the representation was to heat the house, that is a representation wholly inconsistent with the clause contained in the contract and parol evidence was not admissible to vary the terms of the contract, there being no claim of fraud or mutual mistake. *Mandelker v. Goldsmith,* 177 Wis. 245, 188 N. W. 74, and cases cited.

There remains to be considered the contention of the plaintiffs that there was no rescission. There was complaint by the defendants from time to time after the plant was installed. In response to these complaints the plaintiffs from time to time attempted to remove the cause of the difficulty. The plant was installed in July, 1930. In February, 1931, seven months after the installation and between three and four months after defendants began using the plant for heating purposes, Hall told Mallow that he would pay him no more money until the plant heated differently. The plaintiffs did the last work on the plant on March 16, 1931. On April 10th plaintiffs notified the defendants that a lien had been filed; that they would save expense by giving the matter their attention. Thereupon and on April 16th the defendants' attorney wrote a letter which contained among other things the following:

"Mr. Hall purchased this heater under the written representation of Mr. Mallow that it would prove satisfactory. None of these representations have been complied with and Mr. Hall respectfully requests that this oil burner be removed from his premises, that the $525 he has already paid be returned to him forthwith, and in addition thereto that his note for $200 be likewise returned."

This action was begun on June 10, 1931, with all the apparatus still in place. Apparently from the record the

apparatus remained in place and in use as late as November, 1931.

Sec. 121.69 (4) provides:

"Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. . . ."

Sec. 121.69 (5):

"Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid. . . ."

Assuming that the attempted rescission came within a reasonable time in view of the fact that plaintiffs still continued their efforts to satisfy the defendants (*Fox v. Boldt*, 172 Wis. 333, 178 N. W. 467, 179 N. W. 1) two questions arise: (1st) Was there a complete rescission? (2d) Did the defendants waive their right to rescind the contract by the continued use of the property?

In the letter of April 16th, which forms the basis of the claimed rescission, defendants' attorney wrote plaintiffs' attorney requesting that the oil burner be removed from the premises. The oil burner was only a part of the equipment furnished. No reference was made to the Meyers fuel-saving furnace, which also was a part of the property covered by the sale. While ordinarily these items might be considered separate or divisible, the failure to furnish the required degree of heat might be due either to the failure of the one or the other. Under the circumstances, if the defendant sought rescission he should have offered to return all of the property. Even if his request for its removal can be considered an offer to return, under the undisputed facts in this case the rescission was incomplete. A buyer's right to rescind is conditional on the return of all the goods he

has received unless the contract is severable. *Clifford v. Stewart,* 153 Minn. 382, 190 N. W. 613. See Uniform Laws Anno. "Sales," 414 and cases cited.

After the letter of April 16th the defendants continued to use the property as they had done before, although they knew on April 10th that a lien had been filed and that action to foreclose the lien had been begun on June 10th.

The rule established by the great weight of authority is that a purchaser of personal property may waive or lose the right to rescind the contract for fraud, breach of warranty, or failure of the article purchased to perform the contract, if he uses it in his business or otherwise as his own property for his own benefit or convenience and not merely for testing it or preserving it after he has knowledge of the grounds for rescission. 77 A. L. R. note p. 1167 and cases cited. Such is the rule in this state.

In *J. L. Owens Co. v. Whitcomb,* 165 Wis. 92, 160 N. W. 161, it was held that where a grain separator was used from March 20th to May 1st, when it might have been tested in a few hours, the use constituted an acceptance under the Sales Act. The same rule would apply to a right of rescission under all of the cases.

If there had been a rescission the defendants would have had the right to retain the property as security for the repayment to them of the down payment. That, however, does not confer upon them the right to use the property in the meantime as their own. There was nothing under the circumstances of this case which prevented the defendants from setting the equipment aside and installing other equipment. They had ample time in which that might have been done after they had full knowledge of all of the facts. Nevertheless they permitted the equipment to remain in place and continued to use it in the autumn. They cannot claim the benefit of the rule of use by necessity such as applies to an incomplete building or other property incorporated so

that the buyer is excused from the liabilities which would otherwise follow the continued use of the property under the rule of necessity.

The defense was based on the theory of rescission and also on the theory that the defendants had the right to recover damages for a breach of warranty. The judgment is clearly erroneous and the defendants must be remanded to their remedy, if any, by way of damages.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings.