PRESSURE CAST PRODUCTS CORPORATION, Respondent, vs. PAGE and others, Appellants.

*February 7—March 4, 1952.*

*A. W. Ponath* of Appleton, for the appellants.

For the respondent there was a brief by *Bouck, Hilton, Dempsey & Magnusen* of Oshkosh, and oral argument by *Joseph F. Dempsey.*

FAIRCHILD, J.   The appellants oppose respondent's claim by seeking to show a violation on its part of the terms and conditions of the contract described in the statement of facts. Particularly do they complain of the failure to render proper and agreed assistance at critical times in the initiation and early development of their new enterprise. The facts of the case place appellants' counterclaim in the class of causes where, a breach of warranty by a seller having occurred, the buyer may, at his election, accept and keep the goods and maintain an action against the seller for damages for the breach of warranty. Appellants raise no question on this appeal as to that part of the judgment entered upon respond-

ent's complaint, but contend that the damages allowed by the trial court on appellants' counterclaim are entirely inadequate.

While the written notice served by appellants under date of May 14, 1948, was in the nature of a notice of rescission of the contract existing between the parties, the appellants never at any time returned or offered to return to respondent any part of the equipment which it had sold and furnished them. However, we held in *Fox v. Boldt*, 172 Wis. 333, 178 N. W. 467, 179 N. W. 1, that even though a purchaser gives notice to rescind for breach of warranty under circumstances wherein the purchaser is barred from rescission, nevertheless the notice may be sufficient as a notice of breach of warranty to entitle the purchaser to recover damages. We consider that the notice of May 14, 1948, served by appellants, is sufficient notice under the Uniform Sales Act to entitle them to recover damages for breach of warranty on their counterclaim.

The trial court in his decision found that the appellants were entitled to recover damages on their counterclaim, but that the evidence of damages presented was "untenable, and, except for a few items, does not represent recoverable elements of damages." Although it was impossible from the evidence to determine appellants' damages with reasonable certainty, the trial court fixed the same at the sum of $2,000, which the court stated to be the amount for which the respondent had made formal offer of judgment at the trial. However, this statement resulted from a misunderstanding, and the trial court was mistaken as to the amount. The actual offer was $2,500 rather than $2,000, and it had been rejected by the appellants. We fully agree with the conclusion of the trial court that the evidence as to the damages appellants were entitled to recover on their counterclaim was in unsatisfactory form and not sufficient to enable it to determine the amount, if any, due, from the record before us.

The respondent abandoned its claim to a percentage of the gross sales.

Appellants contend that they are entitled to recover the full purchase price of much of the equipment furnished to them by the respondent and in addition are entitled to recover loss of profits. The equipment for which they claim full purchase price falls into the following three categories:

(1) Equipment which appellants contend was so defective and wrongly constructed as to be absolutely valueless.

(2) Equipment which, while defective, could be remedied and made usable at an outlay of expense very much less than the original purchase price.

(3) Equipment which, while not defective in itself, was not needed by appellants in their operations.

The oven is typical of the type of equipment which the appellants contend was entirely valueless because wrongly designed and constructed. According to appellants' testimony, the oven was the chief cause of their trouble in manufacturing the pressure castings, and when they replaced it with another oven bought on the open market, they were able to manufacture their products successfully. The original oven purchased from the respondent, although discarded from use, still stands on appellants' premises. Its original cost was $1,646.28, and although appellants claim it has no value except for scrap, no testimony was introduced as to what such scrap value would be. Under the provisions of sec. 121.69 (7), Stats., the direct damages for breach of warranty in the case of articles such as the oven, if the appellants are correct in their claim that the oven has no value except as scrap, would be the cost price less the scrap value.

Illustrative of equipment falling into the second category are the eighteen sets of flasks, having a purchase price of $2,700, which were defective because the holes in the same had not been bored at the proper places, but which were

put into good usable condition at an expense of $119.12. In such case the direct damages recoverable would not be the entire purchase price, but the difference between what the articles would have been worth if as warranted and what they were actually worth as delivered. In the absence of any other evidence, the $119.12 cost of repairs would be material in establishing such differential.

As to equipment falling into the third category, which was not defective in itself but which the appellants did not need in their operations, it would appear that the appellants have lost their rights to claim any damages therefor. The appellants relied upon the respondent's superior knowledge to provide only such equipment as would be needed by the appellants in their operations. As the trial court stated in his decision:

"The plaintiff because of a vast experience in a highly specialized production business was bound to know what the defendants did not know about the *amount* and *kind* of 'absolutely necessary' equipment that the defendants would need to successfully engage in the business of producing pressure cast-aluminum match plates and patterns, etc. The decision as to the amount and kind of equipment to be purchased by the defendants and delivered to their Menasha plant was made almost wholly by the plaintiff. The evidence establishes to a reasonable certainty that the plaintiff sold defendants too much equipment, some of which was never used by the defendants. . . ."

However, the appellants' remedy, when they discovered that they had been supplied with too much equipment by the respondent, was to offer to return promptly such equipment and recover the purchase price. It is clear from the evidence before us that after discovering that they had been oversold equipment, the appellants took no steps to return or offer to return the unneeded equipment, and, having slept on their rights, are not now entitled to recover the purchase price thereof.

In addition to the elements of damages already discussed, the appellants would be entitled to recover any other damages directly and naturally resulting in the ordinary course of events from the breach of contract by respondent. See sec. 121.69 (6), Stats. Loss of profits might fall into this category of damages if the appellants were able to establish the same by satisfactory evidence. However, the appellants' evidence of loss of profits consists only of an accountant's report showing that appellants in their operations had sustained a loss during certain specified periods. Many factors, other than defective equipment supplied by respondent, might account for such loss of profits, and such evidence as exists is entirely too speculative to permit the court to find any damages based on such loss of profits.

The respondent contended that most of appellants' trouble was attributable to the fact that appellants installed the equipment themselves instead of having employees of the plaintiff do the same, as required by the contract. However, the evidence presented by appellants disclosed that both the vice-president of the respondent and a skilled employee came to Menasha and attempted to remedy conditions but made no complaint whatever to the appellants about the method in which the equipment was installed, nor did they offer any recommendations for remedying the same.

The respondent is entitled to an affirmance of that part of the judgment granting recovery on the note and open account; but because of the failure of proper proof as to the amount of damages claimed by the appellants on their counterclaim, we conclude that in the interests of justice a retrial of that phase of the case should be had. Sec. 251.09, Stats.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded for further proceedings in accordance with this opinion.