WISCONSIN LIVESTOCK ASSOCIATION, Appellant, vs. BOWERMAN and another, Respondents.

*March 5—April 2, 1929.*

450

452

For the appellant there were briefs by *Keller, Keller &*
*O'Leary* of Appleton, and oral argument by *L. Hugo Keller.*

*F. J. Rooney* and *C. G. Cannon,* both of Appleton, for the
respondents.

The following opinion was filed April 2, 1929:

OWEN, J. · The Bowermans resisted the replevin suit upon
two grounds: their first contention was that the Livestock
Association did not have a sufficient title to the cattle to
enable it to maintain the action. ' As a matter of fact the
Livestock Association did not own the cattle. ' The legal
title to the cattle was in R. M. Harriman, the president of
the Livestock Association, and they were registered in his
name. However, the cattle were delivered to the Bower-
mans with his full knowledge and consent pursuant to the
contract between the Livestock Association and the Bower-
mans, in the negotiation of which he represented the Live-
stock Association. Further than that, it appears that prior
to the execution of the contract he executed a written assign-
ment of his right to the possession of said cattle to the Live-
stock Association for the express purpose of enabling it to
comply with the contract with the Bowermans. It is not
perceived that the question of who owns the legal title to
these cattle is material. The Bowermans received the cattle
from the Livestock Association under a contract pursuant
to which the Bowermans agreed to return to the Association
the same number of cattle which the Association delivered
to the Bowermans plus one half of the female increase. As
against the Bowermans, the Livestock Association was en-
titled to the possession of the cattle which the Bowermans
had agreed to return to it at the expiration of the contract,
no matter where the legal title to such cattle may be as be-

tween the Livestock Association and Harriman, or any one else. "A prior possession is sufficient to enable the plaintiff to· maintain replevin against one not· having a superior interest or right." 23 Ruling Case Law, p. 864.

The next contention is that the Bowermans and the Livestock Association were cotenants in the cattle, and that one cotenant cannot maintain replevin as against the other. A provision in the contract, quoted in the statement of facts, provides that at the termination of·the contract the Bowermans are to return to the Association a like number of females as originally furnished and that the same are to be selected by the Wisconsin Livestock Association. This provision is not of doubtful meaning. It authorizes the Livestock Association to make a selection of any eight head of cattle from the original herd or the increase thereof. The selection of such eight head of cattle divested the Bowermans of any right, title, or interest therein and vested in said Livestock Association the immediate right to possession. The Livestock Association made its selection prior to the institution of the replevin action, and it is plain that as to the eight head of cattle so selected the Livestock Association could maintain the action, and that a verdict should have been directed for the Association for the eight head of cattle so selected.

After the selection of said eight head of cattle thirteen remained. As to these thirteen the Livestock Association and the Bowermans were no doubt tenants in common. It is the rule that "where personal property, severable in its nature, in common bulk and of the same quality,·is owned by several as tenants in common, each tenant may go and sever and appropriate his· share, if it can be determined by measurement or weight, without.the consent of the others, and sell or destroy it, without being liable to them in an action for the conversion of the common property. And where one tenant in common takes from the common property

under such circumstances, if he does not take beyond his proportion or share, he will be presumed, in law, to have severed and taken his own merely. The rule would be different in the case of property not severable in its nature; as animals, for instance, where each tenant has the same right to every animal." *Newton v. Howe,* 29 Wis. 531, at p. 535. See, also, *George v. McGovern,* 83 Wis. 555, 53 N. W. 899; *Rowlands v. Voechting,* 115 Wis. 352, 91 N. W. 990. It is plain that the Livestock Association could not maintain replevin to recover the remaining thirteen head of cattle, or any portion thereof, until they were divided and its portion thereof set apart to it in severalty. If it were unable to make division of the property with the Bowermans in the manner prescribed in the contract, it could have procured a partition thereof under ch. 277, Stats., or it could have proceeded under sec. 331.06. The Livestock Association was entitled to judgment for the possession of the eight head of cattle selected by it, and as to the remainder the defendants were entitled to judgment.

Coming to a consideration of the counterclaim, we will first consider the damages to which defendants were entitled because of the failure of the Livestock Association to furnish a bull as required by the provisions of the contract. There were two periods of about three months each during which the Livestock Association failed to furnish a bull for the herd. For this breach of the contract the jury awarded the defendants damages in the sum of $320. We search the record in vain for any evidence establishing damages for this breach of the contract. There is evidence in the record to the effect that if a heifer comes in heat several times and is not bred she is liable to become barren and never breed. There is also evidence in the record that certain cows came in heat at times when they had no bull with which to breed them. However, there is no evidence in the record to show that any of the cows became barren because

they were not bred at such times, or that they failed to become with calf during each and every year. In the absence of such testimony there is no basis whatever for the assessment of damages by reason of the failure to furnish a bull at such times.

The remaining claim for damages, on which the jury allowed $5,000, may be described as an alleged general breach of the contract, and rests upon the allegation that defendants were induced to enter into the contract by reason of representations made by the Livestock Association that the cattle furnished "were of the highest possible grade and breeding, thoroughbred, healthy, and free from disease, registered Holstein stock and cattle, and were of the highest value and ranked as the very highest in breeding, quality milk producing properties and value, and that the cows from said herd could be sold for the very highest market price and were highly and largely sought after by breeders and dealers in stock, and that said herd was a very valuable and rare one."

The defendants claim that the contract warranted the qualities in the cattle as above enumerated, and disavow any charge of fraud on the part of the Livestock Association. We think, however, that the only way in which this defense is available to the defendants is on the theory that they were induced to enter into the contract by reason of these representations made prior to the execution of the contract. Certainly no such warranties appear in the contract, and parol evidence to show verbal warranties is not admissible (*Fox v. Boldt,* 172 Wis. 333, 178 N. W. 467, 179 N. W. 1), nor are they to be implied therefrom. Treating the situation upon the most favorable theory for the defendants, there is an utter lack of evidence to prove any such representations, or that the defendants were induced to enter into the contract by reason of representations of any such character. The correspondence between the parties, both before and after the execution of the contract, shows that the defend-

ants were very anxious to secure these cattle under the terms of this contract, to the end that at the expiration of five years they would have the nucleus of a pure-bred Holstein herd, and that the Livestock Association was reluctant to enter into the contract because of a doubt entertained that the farm of defendants was sufficiently productive to maintain the herd. Furthermore, correspondence passing between the parties from the time of the execution of the contract and the delivery of the herd until the tuberculin test which condemned a considerable portion of the herd, voices no dissatisfaction whatever on the part of the defendants with the herd, their pure-bred character, or the milk-giving qualities thereof. It further appears that the Livestock Association expressed a willingness to take the herd back if the Bowermans found the terms of the contract burdensome, to which suggestion the Bowermans refused to listen. Furthermore, the Bowermans opened negotiations with a view of buying the herd, indicating their satisfaction therewith. There are no special warranties in the contract, and we find no suggestion of warranties or representations of the character alleged in the negotiations leading up to the contract, in the correspondence between the parties subsequent to the contract, nor in fact in the testimony of witnesses. Under the contract there was to be delivered to the Bowermans a certain number of registered Holstein-Friesian cattle. It affirmatively appears beyond any dispute that the cattle delivered conformed to the specifications. The only warranty of an implied nature which could possibly attach to the contract is that they were healthy cattle. The only thing to indicate that they were not healthy is that they were found tubercular in the fall of 1925. It is contended that this fact justified the finding of the jury that the original herd was tubercular when delivered. But the expert testimony shows that it is impossible to tell when the disease was acquired. It might have been of long or recent standing. A conclusion that the original herd was tubercular when delivered finds support

only in conjecture. There is no evidence to support the allegations of the counterclaim and it should have been dismissed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in favor of the plaintiff as to the eight cows selected to replace the original herd and in favor of the defendants as to the others, and dismissing the counterclaim of the defendants.

A motion for a rehearing was denied, with $25 costs, on June 4, 1929.