# Moss v. Yount.

Jan. 21, 1944.

**416**

Wiley C. Marshall for appellant.

Snyder H. Downs for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On April 6, 1929, appellant, Dulin Moss, executed his note to appellee, Roy Yount, agreeing to pay the latter $219.40 twenty months thereafter, payable in installments of $10 per month. This action was filed by appellee against appellant in the Franklin Circuit Court on March 15, 1941, to collect the full amount of the note and interest.

Defendant answered claiming that the consideration for the note was the purchase by him from plaintiff of a tractor, which is a gasoline power producing machine and that at the time of the purchase and the execution of the note the tractor was not present nor had defendant seen or inspected it, but that he informed plaintiff of the purpose for which it was being bought, which was to produce power for the operation of a hay baler with which plaintiff had contracted with farmers to bale their hay, and also power for plowing purposes with plows that went with the tractor. He also alleged that he was ignorant and uninformed as to the operation of such tractors and that he did not know the condition of the one sold to him, and that he relied on plaintiff's skill and judgment as to the condition of the tractor and its suitability to perform the work and accomplish the purpose for which it was purchased; also that plaintiff expressly represented and warranted its fitness and suitability for that purpose—thus pleading both an express and implied warranty, if the subject matter of the contract (tractor) was of the character to create an implied warranty under the alleged facts.

Defendant, by counterclaim, then alleged that the tractor was wholly worthless and completely incapable of functioning as a power producing machine; that he expended a considerable amount of money in an effort to repair it and lost much time while endeavoring to do so, whereby his employees drew pay while waiting for the restoration of the tractor to a state of useful-

ness. He likewise averred that he was put to expense to obtain substitute power to operate his baler and carry out his contracts with the farmers, of which contracts he notified plaintiff at the time of the purchase, and that all of such losses and expenses aggregated some $756 for which he sought judgment by way of counterclaim. Plaintiff's reply denied the material averments of the answer and stated, in substance, that he did not expressly, or otherwise, warrant the condition of the tractor but expressly stated to defendant that he sold it to him "as it is." By an amended reply he averred that a part of the consideration of the note was an account which defendant owed him for merchandise, which was the products of a milling operation in which plaintiff was engaged, and for which he had bought the tractor secondhand to produce power to operate his mill but had ceased using it and had substituted electrical power for that purpose. Plaintiff then moved the tractor to his farm near Frankfort and left it there where it was at the time the note was made. In subsequent pleadings defendant denied the existence of any other consideration for the note, except the price of the tractor.

A trial was had before a jury, and under the instructions of the court it returned this verdict: "We, the jury, find for the plaintiff in the sum of $186.40 with interest for twelve years at the rate of 3% making a total judgment of $253.50," upon which the court rendered judgment which was plaintiff's entire claim, plus all past accumulated interest. The amount of $186.40 was arrived at by allowing credit for payments that defendant had made on the note reducing it to that amount. The payments by plaintiff were made between the time of his purchase of the tractor and the time he took possession of it in June of the same year when the hay baling season arrived, which was nearly three months. They were admitted by plaintiff, although he did not give credit therefor in his petition, nor did he endorse them on the back of the note. Defendant testified that "Yount guaranteed me to have the tractor and plows ready for use and fit and ready and in condition to perform the work required of them by April 16, 1929. The tractor was to be able to pull plows, bale hay and to do any other work required of it. He said to me when the tractor was fixed up that it would be good and would give service for the next four or five years."

These statements were, in effect, repeated and elaborated upon during the course of his examination, and we discover nothing in his testimony qualifying or modifying what he stated in the above excerpts from his testimony. In testifying to the same point (the contract between the parties) plaintiff said: "Moss asked me if the tractor would bale hay and I said that I could bale hay with the tractor, but would not guarantee the tractor to bale hay with inexperienced men operating this secondhand tractor.

"Q. Did you at any time guarantee the tractor to Dulin Moss? A. No, I did not guarantee the tractor but told Moss that it was operating in the mill every day and it was satisfactory on the job. I said the reason I wanted to sell the tractor was that I had recently installed an electric motor for power in the mill. * * *

"Q. Did you ever guarantee this tractor in any way or to do any particular job? A. No, I did not, but I did tell Moss I could sell the tractor for $225.00 and furnish a tractor operator and guarantee the tractor to operate, but he said that if I could operate the tractor he could operate it and save the difference. I told him he would not do any good with inexperienced help."

Defendant testified that both he and Yount endeavored to repair the tractor so that it would operate but their efforts were in vain, resulting in its final return by defendant to plaintiff's farm. However, plaintiff denied any effort on his part to repair the tractor after it was taken possession of by defendant.

A motion has been made to dismiss the appeal because the amount involved is insufficient to give this court reviewing jurisdiction, the determination of which was passed to a hearing on the merits. It is now overruled because the amount in controversy is the sum total of the judgment which, as we have seen, is $253.50, but which included the past accumulated interest up to the date of its rendition thereby making the interest a part of the judgment drawing interest itself from that time forward and whereby it became a part of the amount involved. Moreover, the amount of the verdict ($186.40)—plus allowable but controverted amounts of defendant's counterclaim—exceeds $200, thereby giving this court the right to take jurisdiction of the appeal.

The court gave to the jury six instructions all of which were prepared and offered by counsel for plaintiff to which defendant objected, but his objections were overruled. Defendant then offered eight instructions to which plaintiff objected and the court sustained the objection and refused to give either of them. The instructions given by the court contained abstract principles of law with reference to the sale of personal property without qualifications adjusting the instructions to the evidence heard upon the trial. While the instructions offered by defendant approached nearer to the proper practice, but they, or some of them, failed to measure up to the correct rule in such cases. It would consume too much space to copy the offered and rejected instructions, but we will later state the propositions that should have been submitted under the evidence as adduced at the trial. The court gave an instruction based upon both express and implied warranty of the tractor but declined to instruct on any part of defendant's counterclaim, because of its conclusion, as stated in an opinion rendered and made a part of the record in the order overruling defendant's motion for a new trial, that "the court is now of the opinion, after hearing all of the evidence produced in the case, that the counterclaim pleaded by the defendant was, in effect, a sham pleading," and it also refused to consider such failure as an error in overruling defendant's motion for a new trial although the error was one of the grounds urged therefor. We think the court was in error in treating defendant's counterclaim as a sham plea, or that the evidence disclosed it as such, to the extent of defendant's expenditures in trying to repair the tractor, and the loss of time (including idleness of his employed force while making such reasonable efforts to repair), since such items are clearly the direct result of the defective condition of the tractor. However, the cost to which defendant was put in supplying substituted power (including amounts paid for the purchase of animals and of another tractor) should not be allowed as a counterclaim, since defendant through such purchases became the owner of the substituted power facilities which were presumptively worth as much as the price paid therefor. The court therefore erred in not instructing the jury on his counterclaim to the extent indicated.

The proof showed beyond controversy that the trac-

tor was what might be termed absolutely worthless, except as junk. With all of the efforts made by experienced mechanics and operators it could not be made to run and produce power more than ten or fifteen minutes in succession, clearly indicating that necessary parts for complete operation had become worn and broken to the point of being incapable of functioning. Defendant—if there existed either an express or implied warranty—was thereby authorized to make reasonable efforts to restore the purchased article to a condition where it would serve the purpose for which it was bought and intended to be appropriated by him, and his expense while making such reasonable effort, would become the proximate result of a breach of either the express or implied warranty, if one existed.

But there lurks in the record a question which is not argued in briefs but which was impliedly waived by plaintiff in offering and obtaining an instruction on an implied warranty. That question is: Whether or not an implied warranty arises upon the sale of secondhand goods? In 55 C. J. 751 the text on this point says: "Generally there is no implied warranty of fitness in the sale of secondhand articles." There is cited in support of that statement only the case of Hysko v. Morawski, 230 Mich. 221, 202 N. W. 923. Likewise in the text in 42 C. J. 780, sec. 320, under the general subject of motor vehicles, it is said: "In general there is no implied warranty of the quality or condition of a used motor vehicle, nor that it is adapted to the purpose for which it is purchased, and the rule of caveat emptor applies." To that text is cited the case of Warren v. W. W. Sheane Auto Co., 118 Wash. 213, 203 P. 372. But those cases, among other differences between them and the instant one, appear not to take into consideration the effect of uniform sales statutes which our Legislature enacted at its regular session in 1928 by Chapter 148, page 481 of the Session Acts of that year. It purports to be an all-coverage law applicable to sales of personal property and is section 2651b-1 et seq. in Baldwin's 1936 Revision of Carroll's Kentucky Statutes, and section 361.010 et seq. in KRS. Section 361.150 of KRS (2651b-15, Carroll's Kentucky Statutes) legislates with reference to implied warranties, saying in part: "* * * There is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a

sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.'' That language covers all the statutory included classes of personal property with no exclusion of secondhand articles. On the contrary, it embraces all ''goods supplied under a contract'' and the first inserted exception (stating wherein an implied warranty arises) there is likewise found no exception as applicable to secondhand goods. In other parts of the Act—its section 76 defining terms—it is prescribed that: ''goods' include all chattels personal other than things in action and money. The term in-includes implements, * * *.'' Again we find that no exclusion of secondhand goods is made in the statutory definition of the property dealt with by the statutes. To exclude secondhand goods would be the insertion by the court of an exception from the all-coverage language of the statute itself. We therefore conclude that the statute permits the implication of an implied warranty when the facts exist, or testimony establishing such facts is introduced upon which the statute permits the creation of an implied warranty. We have heretofore seen that there was such evidence introduced by the plaintiff; hence the court properly submitted the question of implied warranty to the jury. But there should be added thereto that no such implied warranty would arise, notwithstanding plaintiff may have been told the purpose for which the tractor was bought by defendant if he at that time repudiated any warranty and stated that he sold the tractor ''as it is.''

Our final conclusion, therefore, is that the court should give an instruction based upon both an express warranty, as well as one based on an implied warranty, but the latter to be qualified as indicated, and to permit recovery on defendant's counterclaim if the jury should believe that either of such warranties was made and was breached, but the counterclaim should be limited as hereinbefore pointed out.

Upon another trial the court will submit to the jury in proper form whether or not plaintiff expressly warranted the tractor sold to plaintiff, or if not, whether there was created an implied warranty as herein

defined and qualified, and if either existed a verdict for defendant should be returned; but if the jury found that neither existed, it should return a verdict for plaintiff.

Wherefore, for the reasons stated, the judgment is reversed with directions to grant the appellant a new trial and for proceedings consistent with this opinion.

The Whole Court sitting.