MYERS et al. v. MALONE & HYDE, Inc., et al.

No. 13813.

United States Court of Appeals
Eighth Circuit.

March 14, 1949.

Merle Shouse and J. Loyd Shouse, both of Harrison Ark., and Clinton R. Barry, of Fort Smith, Ark., for appellants.

J. Smith Henley and Ben C. Henley, both of Harrison, Ark., for appellee Malone & Hyde.

W. S. Walker and Virgil D. Willis, both of Harrison, Ark., for appellee J. A. Center.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The controversies in this action arise out of two sales of a certain lot of canned tomatoes shipped in interstate commerce. J. A. Center, doing business as Alpena Canning Company in Arkansas, processed and canned the tomatoes and sold them to Myers Milling Company (here called Myers) and Myers sold them as Extra Standard in quality to Malone and Hyde, Inc., a wholesale grocery corporation, doing business at Memphis, Tennessee. Both sales were consummated on November 7, 1946, when Center, at the written direction of Myers, loaded the goods on board a freight car at Cricket, Arkansas, and consigned them by Missouri Pacific Railroad bill of lading to Malone and Hyde at Memphis, Tennessee. After Malone and Hyde received them there and paid for them and sold a small part of them, the rest were seized by the United States and were condemned as misbranded in proceedings had in the United States District Court for the Western District of Tennessee, Western Division, pursuant to 21 U.S.C.A. § 334. The ground was that the cans were shown on test to contain less than the percentage of drained weight required by the Pure Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., and Regulations to permit their being shipped as they were shipped unlabelled as Standard Grade. Malone and Hyde, pursuant to authority and direction of the condemning court, labelled the cans "Below Standard in Quality— Good Food—Not High Grade", and as they were not merchantable in ordinary course of business, disposed of them for the best price obtainable. It brought the present action for breach of warranty against Myers to recover the purchase price, freight charges and costs and expenses of the condemnation and sale, less the amounts it had obtained as stated. Myers's answer admitted that it had sold the goods to plaintiff f. o. b. Cricket to be shipped to Memphis, and generally denied plaintiff's allegations. It also set forth that Myers had bought the goods from J. A. Center who knew that they were bought for shipment in interstate commerce and that if the allegations of plaintiff's complaint were true, and if plaintiff was entitled to recover from Myers, then Myers was entitled to recover over from Center in such sum as plaintiff may recover. Center having been brought in as a third party defendant under Rule 14 Federal Rules Civil Procedure, 28 U.S.C.A., answered admitting he had sold Myers a carload of canned tomatoes which was subsequently transported in interstate commerce from Cricket, Arkansas, to Memphis, Tennessee, but denying that he knew or had notice at the time of the sale that the goods were to be so transported in interstate commerce. He made general denial and specifically denied that he was liable to Myers irrespective of any liability of Myers to the plaintiff.

There was jurisdiction by reason of diversity of citizenship and amount involved and a jury trial was had. At the conclusion of all the evidence the court on plaintiff's motion instructed the jury to return a verdict against Myers for the amount of plaintiff's loss computed by the court upon undisputed evidence, and the jury complied. The case against Center then proceeded. The court refused to submit to the jury Center's specially pleaded defense that he had no knowledge or notice at the time he consummated the sale to Myers that the goods were to be shipped in interstate commerce. The proof established that he then had such knowledge and there was no substantial evidence to the contrary.

The court also determined and instructed the jury that the decree of condemnation which was duly proven, conclusively fixed the status of the canned tomatoes as being below standard in quality and therefore misbranded. But it was urged as defense for Center that the canned tomatoes were of standard quality and therefore not misbranded when Center consummated his sale of them but deteriorated without Center's fault to below standard quality during their transportation from Cricket to Memphis. The court accordingly submitted the case as to Center to the jury on that theory by instructing that, "the burden is upon the third party defendant, J. A. Center, to prove that on and prior to November 7, 1946 * * * the date they were delivered to the carrier * * * the tomatoes were not below standard in quality by reason of not being of the necessary drained weight, or that subsequent to said November 7, 1946, while being transported in interstate commerce from Cricket, Arkansas, to Memphis, Tennessee, without fault or carelessness on the part of * * * Center, the tomatoes' drained weight was reduced below the minimum of 10¼ ounces per can, and unless you do so find you should return a verdict for [Myers] and against * * * Center in the sum of $7,333.41. On the other hand, if you find from the evidence that prior to November 7, 1946, the tomatoes * * * were standard grade * * * and possessed the necessary drained weight content * * * and in addition the drained weight of the tomatoes was reduced below the minimum of 10¼ ounces during and by reason of the manner in which the tomatoes were handled in transportation from Cricket, Arkansas, then you should return a verdict for * * * Center." To which Myers excepted. The jury having deliberated, returned a verdict in favor of Center and against Myers. The court entered a single judgment on the two verdicts: (1) for plaintiff against Myers in accord with the instructed verdict, and (2) dismissing the case as to Center in accord with the deliberated verdict.

This appeal is taken by Myers to reverse the entire judgment.

(1) As to the judgment of dismissal in favor of Center, it is apparent in view of the court's instruction that the verdict of the jury is a finding that the canned tomatoes in question were of standard grade when Center introduced them into interstate commerce at Cricket, Arkansas, and that they deteriorated below that standard afterwards in transit without Center's fault, and appellant contends for reversal that there was no evidence to support such finding.

■ Careful study of the record convinces that the contention should be sustained.

The methods by which tests of the quality of foods transported in interstate commerce must be made in order to determine how they shall be branded are prescribed by valid regulations under the Pure Food, Drug, and Cosmetic Act, 21 U.S.C.A. 343 (h) (1), and the evidence here is clear that the canned tomatoes involved on being subjected to such prescribed tests after their arrival at Memphis, were below standard grade and were misbranded. The determination of the trial court and its declaration to the jury that the proceedings and decree in condemnation had "fixed the status of the tomatoes as being below standard in quality" is not in issue in this appeal. But there is no evidence that the canned tomatoes in the shipment were subjected to the prescribed tests before they were introduced into and moved in the interstate commerce. It appears from testimony offered by Center that he had on hand more than ten thousand cases of canned tomatoes and was expecting to sell to the government for the Army. With that in view, an inspection of a certain lot of 1314 cases was made and the result certified. But the tests in that inspection, though sufficient for the Army's requirements in respect to that lot, were not made as required "for commercial inspection." There were 2272 cases of canned tomatoes involved in the sales and shipment, and the evidence concerning the testing of the lot of 1314 cases did not tend to prove that the shipment here involved was of standard grade at the time of shipment.

Mr. Center testified at length in his own behalf, but despite his long experience as a canner it is apparent from all his testimony

considered most favorably to him, that he had no knowledge or means of knowing what the percentage of drained weight content of the 2272 cases of canned tomatoes was at the time of shipment, and his testimony did not tend to prove the fact found by the jury. Nor did that of Mr. Lorren R. Gibson, the officer in charge of Processed Food Inspection Bureau stationed at Fayetteville, Arkansas. Though he had long experience in the inspection of foods and appeared disinterested and was of the opinion that the cans of tomatoes do suffer some loss in drained weight content in such transportation as those in question were subjected to, he had never made any tests to determine the extent of such loss and knew of none and said that on tests made of canned tomatoes after completed transportation "we wouldn't make any estimate of what they were at the original shipping point * * *. We would be guessing at that." Katherine McNair, employed in the Federal Security Agency Food and Drug Administration, experienced somewhat like Mr. Gibson, gave it as her opinion that she would expect no appreciable loss in drained weight through shipment from Memphis to St. Louis. But neither of the experienced witnesses could or did give testimony tending to support the jury's finding. There was no evidence or attempt to prove that the handling of the canned tomatoes in loading, transportation, and unloading, was other than that normally incident to such a shipment. All the details of testimony referred to and argued for Center have been considered, but our conclusion is that the jury's finding that the canned tomatoes were of standard grade when shipped and ceased to be so in transit is not supported by evidence. The deliberated verdict therefore must be held for naught.

■ (2) With that conclusion in mind, we turn to Myers's attack upon the judgment against it rendered on the directed verdict.

Although Myers took exception at the trial to the giving of the peremptory instruction against it, the exception was not on the ground that upon the evidence Myers had established a defense to plaintiff's action or that the evidence presented a jury question as to liability. The pleadings and proof established that Myers had sold the canned tomatoes to plaintiff as Extra Standard in quality and they were not of that quality but were of inferior quality. There was manifestly breach of Myers's warranty in that respect requiring a judgment for plaintiff. But Myers excepted in respect to the amount. The court computed the amount by including all the undisputed items paid out by plaintiff for purchase price, freight, and condemnation costs and expenses and deducting the salvage, but Myers contended at the trial and now contends that if the canned tomatoes were of standard quality when shipped and deteriorated below that quality without its fault during transportation, then the measure of plaintiff's recovery against Myers ought to be only the difference between the value of canned tomatoes of extra standard quality and the value of canned tomatoes of standard quality.

■ Our conclusion that there was no evidence to support a finding that the canned tomatoes were of standard quality at the time of shipment and deteriorated below that grade during transportation disposes of the only ground of the exception which Myers took to the peremptory instruction against it. The undisputed evidence in the record clearly established that Myers became indebted to plaintiff on account of Myers's breaches of warranty in its sale of the tomatoes in the amount for which judgment was rendered against it. That part of the judgment which is in favor of plaintiff and against Myers must be affirmed.

(3) We next consider what disposition should be made of Myers's case for recovery over and against Center in view of our conclusion that the verdict therein was not supported by evidence in the particulars discussed.

Though it was undisputed that Myers had warranted the canned tomatoes to be extra standard grade in its sale to the plaintiff, there was dispute between Myers and Center as to whether Center had warranted them to be of that quality in his sale to Myers. We do not undertake now to pass on that dispute and merely recognize that it is presented in the record.

But it was alleged in plaintiff's complaint that Myers had also warranted that the tomatoes "complied fully with the standards set by the Federal Food, Drug and Cosmetic Act as set forth in 21 U.S.C.A. § 301 et seq. and the regulations promulgated thereunder, and defendants warranted to plaintiff that such tomatoes might lawfully be moved in interstate commerce." Myers pleaded "that if the allegations set forth in plaintiff's complaint are true and if plaintiff is entitled to recover from these defendants and third parties plaintiff then and in such event these defendants and third parties plaintiff are entitled to recover over and against the said third party defendant [Center] in such sum as the plaintiff herein may recover."

Thus Center when he was brought into the case was equally with Myers called on to respond to the charge of that same breach of warranty. His defense that he had not sold to Myers for interstate shipment was passed on by the District court and it settled for the purpose of this appeal that his sale to Myers was consummated when and only when he loaded the goods on the freight car at Cricket, Arkansas, and consigned them for interstate shipment to Memphis, Tennessee. He was therefore a seller of goods in interstate commerce, and it is a question of law whether as such seller there was implied warranty on his part that the goods he sold could lawfully be moved in such commerce.

This court had occasion in Smith v. Great Atlantic & Pacific Tea Co., 8 Cir., 170 F.2d 474, to consider the applicable Uniform Sales Act which is in force in Arkansas as Act 428 of the General Assembly of Arkansas, 1941. There the vendor had sold a lot of canned spinach for shipment in interstate commerce and after arrival in the foreign state the goods had been seized and condemned for misbranding, as in this case. Our holding was that the Uniform Sales Act means that a seller who deals in a certain food impliedly warrants under section 15(2) of the Act to one who buys such food from him that the food shall be of merchantable quality, and that the seller is liable for breach of such warranty. The spinach involved in that case was condemned for misbranding because it was infested with aphis and unfit for human food, whereas here the tomatoes were "Good Food" but were "misbranded in that they were Below Standard in Quality." But being misbranded they were subject to confiscation by the United States and could not be legally held or sold by the buyer. They were contraband under the law of the United States and as such they were not merchantable.

Therefore as a matter of law there was the same actionable breach of implied warranty on the part of Center in his sale of the goods to Myers for interstate transportation as there was on Myers's part in its sale of the same goods in the same commerce to the plaintiff. So that the judgment of dismissal as to Center can not be sustained and Myers was entitled to have a judgment over against Center.

The record shows that at the conclusion of all the evidence Myers moved for directed verdict against Center and we conclude that as Center had failed to sustain his defense that he had not sold the goods for interstate commerce nor his claimed defense [1] that the goods had deteriorated from Standard to Below Standard grade in

---

[1] Though the points on which the appeal is presented do not require us to so declare, the law appears to be that the processor and seller of the tomatoes (Center) impliedly warranted that they were merchantable for the purpose for which he sold them, not only at the moment of sale but that they were in condition to stand the shipment and be in condition for resale in ordinary course on arrival at their destination. "When the goods are sold for shipment in interstate commerce, the implied warranty that the goods are fit for the purpose for which they were manufactured and sold should meet the test of the federal pure food act." Kansas City Wholesale Grocery Co. v. Weber Packing Corporation, 93 Utah 414, 73 P.2d 1272, 1275; Bob's Candy & Pecan Co. v. McConnell, 140 Tex. 331, 167 S.W.2d 511. "Where merchandise is shipped to a retail dealer to be resold, and he has no opportunity to inspect it, there is an implied warranty that the goods were in condition to stand shipment and be in condition for resale on arrival at destination." Metal Furniture Co. v. Goss, 158 Ark. 145, 249 S.W. 550; Southern Produce Co. v. Oteri, 94 Ark. 318, 126 S.W. 1065; American Soda Fountain Co. v. Medford Grocery Co., 128 Or. 83, 262 P. 939.

transit, the evidence established as matter of law that he was liable for breach of implied warranty of the merchantable quality of the goods to Myers and that peremptory instruction against him should have been given.

The trial court computed the amount of Center's liability to Myers in case Myers was entitled to recovery at the sum of $7,333.41, and no question as to the computation of the amount or its correctness appears to have been raised on the trial or here.

The judgment is therefore affirmed insofar as it awards judgment in favor of plaintiff against Myers. As to that part which dismisses Myers's case against Center the judgment is reversed. That case is remanded for new trial in conformity with this opinion. We may not on this appeal direct the entry of any judgment contrary to the verdict of the jury. The appellant did not move for judgment notwithstanding the verdict as authorized by Rule 50(b), Federal Rules Civil Procedure. Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Globe Liquor Co., Inc. v. San Roman, 332 U.S. 571, 68 S.Ct. 246.

Affirmed in part and in part reversed and remanded for new trial.