## STANDARD BRANDS INCORPORATED v. CONSOLIDATED BADGER COOPERATIVE.

### Civ. A. No. 4642.

United States District Court
E. D. Wisconsin.
March 13, 1950.

6

William F. Morris, De Pere, Wis., for plaintiff.

Wallrich Law Office, Lloyd G. Andrews, Shawano, Wis., for defendant.

TEHAN, District Judge.

This action was brought by the plaintiff to recover the balance of a purchase price it alleges is due to it on a contract for the sale of a cheese manufacturing plant. The defendant admits the execution of the contract but defends its nonpayment of the balance, claiming a set-off arising from expenses incurred by defendant because of a faulty boiler. The defendant claims the benefit of warranties as to the fitness of this boiler.

Plaintiff has moved for summary judgment on the basis of the pleadings, affidavits and depositions on file with the Court. Under Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A., summary judgment is granted only if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our task then is to examine the record to see if it does present a genuine issue of material fact.

The pleadings indicate that formal contract negotiations began with the submission of an offer by the defendant to the plaintiff on August 4, 1947. This offer which was contained in a letter, recited in part:

"This offer is submitted on behalf of our organization *and summarizes the final conclusions reached at our several conferences.* This offer has been discussed with our Board of Directors and has received their approval.

\* \* \* \* \* \*

"(1) We will pay $63,600 for the land, milk plant, garage, and other out-buildings, sewage rights, wells and water rights lo-

cated on the lot fronting on Elizabeth Street and in the intersection of Morrow Street.

"(2) We will pay the sum of $43,200 for the equipment located in said building as appears from the final listing thereof submitted by you under date of August 1, 1947,—specifically excluding from said list the five items listed on page 2 thereof not suitable for our purpose and consisting of the following: * * *". (Emphasis added.)

On August 28, 1947 the plaintiff replied to the offer suggesting a modification of a provision, not relevant to this controversy, and accepting all the other provisions of the offer.

Then, on September 11, 1947, a document entitled, "Agreement", which incorporated all of the provisions of the offer and counter-offer, was formally executed by the parties. This agreement provided as follows:

"This Agreement made and entered into this 11th day of September, A.D.1947, by and between Standard Brands Incorporated, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, of New York County, New York, party of the first part, hereinafter called 'Seller', and Consolidated Badger Cooperative, a cooperative association duly organized and existing under and by virtue of the laws of the State of Wisconsin, with principal offices in the City of Shawano, Shawano County, Wisconsin, party of the second part, hereinafter called 'Buyer',

*"Witnesseth*

"For and in consideration of the mutual promises, covenants and agreements between the parties hereinafter contained, and the payments of the sums of money in the amounts and at the times and in the manner by second party to first party as hereinafter specified, it is stipulated and agreed by and between the parties hereto as follows:

"Seller agrees to convey to Buyer its cheese factory property in the City of Seymour, Outagamie County, Wisconsin, described as follows:

   \*    \*    \*    \*    \*    \*

"Seller agrees to convey the real-estate and buildings by Corporate Deed duly executed and acknowledged in customary form and content, conveying good merchantable title to said premises, and to convey the said machinery and personal property by proper Bill of Sale duly executed and delivered.

"Buyer agrees to pay Seller for said property, as follows:

"1. Sixty-three Thousand Six Hundred Dollars ($63,600.00) for the land, milk plant, garage and other out buildings, including sewage rights, wells and water rights.

"2. Forty-three Thousand Two Hundred Dollars ($43,200.00) for the equipment located in and used in connection with said property more particularly described in Exhibit A attached hereto.

"3. In addition to the above amounts Ten Thousand Dollars ($10,000.00) in cash on or before August 15, 1948.

"4. Buyer agrees to purchase and pay for two (2) Stoelting Agitators recently installed at the invoiced price thereof.

"5. Buyer agrees to purchase and pay for one (1) York Pasturizer installed at the cost price, less depreciation, plus installation cost, the total cost of which, however, is not to exceed Five Thousand Dollars ($5,000.00).

"6. Seller agrees to deliver possession of the said property and premises to the Buyer at Twelve (12) o'clock midnight September 15, 1947.

"It is understood and agreed by and between the parties hereto that upon the execution of this Agreement and prior to the delivery of possession Buyer will pay to Seller the sum of Fifty Thousand Dollars ($50,000.00) and the balances agreed to be paid hereunder to be paid at the time of the delivery of properly executed documents of conveyance showing good marketable title to the premises therein conveyed except the deferred payment which shall be paid at the time and in the manner hereinbefore specified.

"It is further understood and agreed by and between the parties hereto that the Seller shall retain and have the right to the exclusive use of the warehouse building on said premises for its convenience in the removal and disposition of its equipment for a period not to exceed sixty (60) days from the date of the delivery of possession of said premises to Buyer.

"It is further understood and agreed that the real-estate taxes assessed for the year 1947 shall be pro-rated between the parties to the date of the delivery of possession of the premises to the Buyer.

"In Witness Whereof, the parties hereto have caused these presents to be executed by their duly authorized officers and their corporate seals to be hereto affixed the day and year first above written."

Exhibit A attached to the contract provided in part:

"Exhibit A

"*Seymour Cheese Factory Equipment*

\* \* \* \* \* \*

"*Boiler Room*

"1 Par compressor and 5 H.P. motor for cooler

"1 150 H.P. Freeman & Sons boiler equipped with Iron Fireman Stoker and water pump \* \* \*."

Pursuant to the terms of the agreement, the plaintiff executed and delivered to the defendant the necessary documents to convey title to the real and personal property involved, and the defendant paid the plaintiff the purchase price stated in the agreement with the exception of the $10,000 referred to in paragraph numbered 3 of the contract, which was not paid when it came due and has not been paid. To collect this $10,000, plaintiff brought this action.

The defendant seeks to defend its non-payment by alleging that during the negotiations prior to the execution of the aforementioned agreement the plaintiff, through its agent, orally warranted that the 150 H.P. Freeman & Sons boiler "was sound, safe, without defects, in good condition, and amply fit for the purpose for which it would be used by the purchaser", and that, in fact, the boiler was not usable for the purposes for which it was needed and had to be replaced. Thus, the defendant seeks the opportunity to establish an express warranty. Plaintiff contends that any evidence seeking to establish such express oral warranty is inadmissible in that it tends to place upon the plaintiff an obligation not assumed by it in the written agreement, or, in other words, it tends to modify the written agreement by adding these warranties thereto.

██ As noted above, the written agreement resulted directly from a written offer of the defendant which was accepted by the plaintiff and formally integrated into the contract which set forth the obligations of the parties. This Court feels that the instrument on its face shows itself to be a complete recital of the obligations of the respective parties. · The rule is very well established that parol evidence may not be admitted to add to the terms of a written agreement. 32 C.J.S., Evidence, § 851; Restatement of the Law of Contracts, sec. 237. Such evidence is clearly not admissible in this jurisdiction.[1] Using language which is applicable to this case, the Wisconsin Supreme Court has said: "Certainly no such warranties appear in the contract, and parol evidence to show verbal warranties is not admissible (Fox v. Boldt, 172 Wis. 333, 178 N.W. 467, 179 N.W. 1), nor are they to be implied therefrom." Wisconsin Livestock Association v. Bowerman, 198 Wis. 447, 455, 224 N.W. 729, 732. For the reason that no parol evidence would be admissible to add warranties to this contract, the Court feels that in this instance, as a matter of law, the defendant cannot claim the existence of an express warranty.

Defendant also alleges the existence of implied warranties growing out of the fact that plaintiff knew the purposes for which defendant needed the boiler. Sec-

---

[1]. The parol evidence rule is not a rule of evidence but one of substantive law.

American Crystal Sugar Co. v. Nicholas, 10 Cir., 124 F.2d 477.

tion 121.15, Wisconsin Statutes, 1947 provides:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

■■ Since the implied warranty resulting from the operation of this statute attaches only to personal property, we must first face the contention of the plaintiff that the boiler was a part of the realty. While a boiler attached to the realty, as this one was, is generally considered to be a fixture and part of the realty, the owner of such realty can convey such fixture as personalty if he so intends. Lindoft v. Vandenberg, 201 Wis. 330, 230 N.W. 46. The intent of the vendor (plaintiff, here) is a question of fact. Supporting the defendant's contention that it was the intention of both the parties to treat the boiler as part of the personalty is the fact that it was conveyed by bill of sale and also the fact that the consideration in the contract is apportioned between the real estate and equipment (the boiler was listed as part of the equipment). Thus, the Court could not rule from the pleadings, depositions and affidavits on file that as a matter of law the boiler was real estate. Therefore, we must consider the question of the existence of an implied warranty.

■■ An implied warranty arises as a matter of law so it is not barred by the parol evidence rule. Valley Refrigeration Co. v. Lange Co., 242 Wis. 466, 8 N.W.2d 294. Plaintiff asserts that the general rule is that no implied warranty of fitness arises from the sale of secondhand items. 55 C.J. sec. 719. The boiler in question here was admittedly a used boiler. The Court is thus confronted with the question of determining whether this rule obtains today in Wisconsin in the light of sec. 121.15(1) of the Wisconsin Statutes.

■■ Implied warranties existed in the common law of Wisconsin before the adoption of sec. 121.15(1), Wisconsin Statutes. Getty et al. v. Rountree, 2 Pin., Wis., 379, 54 Am.Dec. 138. Counsel have not cited any Wisconsin decisions which considered the existence of an implied warranty arising from the sale of secondhand goods. However, there seems to be agreement that under the common law there was generally no warranty implied in the sale of secondhand goods. 55 C.J. sec. 719; 151 A.L.R. 447. Assuming, without deciding, that such general rule was a part of the common law of the state of Wisconsin, we must decide whether sec. 121.15 was a codification of this common law or whether it was intended to extend the scope of implied warranties.

■■ Looking first to the language of the statute, we find no indication of any legislative intent to exclude secondhand items from the coverage of the statute. The statute provides that there shall not be any implied warranty except in the instances set forth. Subsection (1), which concerns us here, requires (first) that the seller make known to the buyer the purpose for which the goods are required, and (secondly) that the buyer rely on the skill or judgment of the seller. Here there is no exclusion of secondhand goods. The statute provides that a seller need not be a grower or manufacturer. This provision is consistent with an intent to include secondhand goods in its coverage. The term "goods" is defined in sec. 121.76, Wisconsin Statutes, 1947 as follows: " 'Goods' include *all* chattels personal other than things in action and money. * * *" (Emphasis added.) Thus, it would appear that on its face the statute does not exclude secondhand items from its coverage.

Chapter 121, Wisconsin Statutes, is the Uniform Sales Act. While the Wisconsin Supreme Court has not had occasion to construe the statute in this regard, the question has arisen in other jurisdictions

which have enacted similar legislation. In the great majority of these jurisdictions it has been held that the Uniform Sales Law does not exclude from its coverage secondhand goods. Moss v. Yount, 1944, 296 Ky. 415, 177 S.W.2d 372, 151 A.L.R. 441; Drumar Mining Co. v. Morris Ravine Mining Co., 1939, 33 Cal.App.2d 492, 92 P.2d 424, 151 A.L.R. 463. This Court feels that this is a proper interpretation of the statute.

▉ Adopting this construction of the statute, the question then becomes: Do the pleadings, depositions, admissions and affidavits on file in this matter reveal as a matter of law that (1) the defendant did not make known to the plaintiff the purpose for which the boiler was required, or (2) the defendant did not rely on the seller's skill or judgment? There seems to be no question but that the plaintiff knew the purpose for which the boiler was required because both parties knew that the defendant intended to continue operating the cheese manufacturing plant and a proper boiler was essential for this undertaking.

The question of whether or not defendant relied on the plaintiff's skill or judgment does, however, present an issue which, in the opinion of the Court, has not been conclusively resolved in plaintiff's favor. The Court has in mind that the record indicates that the circumstances surrounding the negotiations were not such as would normally appear where a buyer relies on the skill and judgment of the seller. Among other things, it appears that the buyer here was a man skilled in the business, who had handled other similar transactions; that he was, by his own admission, particularly careful on the question of the condition of boilers; that he had the benefit of counsel in the negotiations and that he, himself, drafted the offer without including therein reference to the condition of the boiler. Persuasive as these facts are, the Court does not feel that it can find that they are so conclusive on this point that it is warranted in denying to defendant any opportunity to have its day in court to attempt to prove its claim of reliance on the plaintiff's skill and judgment.

Therefore, since this Court cannot rule on the question of reliance as a matter of law, the motion of plaintiff for summary judgment will be denied and the matter set down for trial. Counsel for the defendant will prepare the order and submit it to the Court.